IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LaMONT ALLEN, | ) |
| Plaintiff, | ) ) ) ) |
| v. | ) Case No. 11 C 4147 ) |
| | ) Judge Charles R. Norgle |
| MARCUS HARDY, | ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, LaMont Allen, an Illinois prisoner currently incarcerated at the Stateville Correctional Center, filed this 42 U.S.C. § 1983 action against Stateville Correctional Center Warden Marcus Hardy. Plaintiff contends that a myriad of conditions of his confinement at Stateville constitute cruel and unusual punishment. Defendant has filed a motion for summary judgment, in which he argues that the conditions Plaintiff allegedly experienced did not rise to the level of a constitutional violation. For the reasons stated below, Defendant's motion for summary judgment is granted.

### I. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In determining the existence of a genuine issue of material fact, a court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

If the moving party meets its burden of showing that there are no issues of material fact and that he or she is entitled to a judgment as a mater of law, the non-moving party must "go beyond the pleadings and affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact." *Borello v. Allison*, 446 F.3d 742, 748 (7th Cir. 2006) (internal quotation marks and citations omitted); *Celotex*, 477 U.S. at 322-26. A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists only if a reasonable finder of fact could return a decision for the nonmoving party based upon the record. *See Anderson*, 477 U.S. at 252; *Insolia v. Phillip Morris Inc.*, 216 F.3d 596 (7th Cir. 2000).

When addressing a summary judgment motion, a court derives the background facts from the parties' Local Rule 56.1 Statements, which assist the court by "organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side propose[s] to prove a disputed fact with admissible evidence." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000). Because Plaintiff is proceeding *pro se*, the Defendant served him with a "Notice to *Pro Se* Litigant Opposing Motion for Summary Judgment" as required by N.D. Ill. Local Rule 56.2. The notice explains that a litigant's failure to respond to the movant's Local Rule 56.1 Statements results in this Court considering uncontroverted statements admitted. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006). Although Plaintiff has filed a response to Defendant's motion, the response fails to address Defendant's Rule 56.1 Statements. This Court may thus consider the facts stated in Defendant's Rule 56.1 Statements admitted, to the extent they are supported by the record. *Raymond*, 442 F.3d at 608.

## II. FACTS

Plaintiff is incarcerated at Stateville Correctional Center (Def's. Rule 56.1 Statement ¶ 1.) During his incarceration, Plaintiff has lived in three different cell houses: X House, F House and B House. (*Id.*) Each cell house contains multiple cells. (*Id.*) The grievance and complaint Plaintiff submitted and filed that pertain to the conditions of his confinement were both written by another inmate. (*Id.* at ¶ 3.) The complaint and grievance were exact copies of a grievance and complaint, written by the other inmate, and submitted and filed by multiple inmates. (*Id.*)

Plaintiff alleges that Defendant failed to provide him with adequate cleaning supplies. (Def.'s 56.1 Statement ¶ 4.) He further alleges that unnamed "experts" will testify that "dirty walls and floors, and collection of garbage and filth, provide breeding places for vectors and encourage the growth of disease-causing micro-organisms." (*Id.*) In his deposition, Plaintiff testified that he is currently provided cleaning supplies, such as disinfectant, once a week. (*Id.* at ¶ 5.) The procedure for receiving weekly cleaning supplies has been in place since "sometime last year." (*Id.*) Prior to last year, inmates were provided soap with which to clean their cells. (*Id.*) Inmates used their personal towels and wash clothes to clean their cells. (*Id.*) Plaintiff cannot identify a single instance where he asked for cleaning supplies and he was not supplied such supplies. (*Id.*) Plaintiff does not know the names of any experts in environmental health that would testify regarding the cleanliness of his cell and he cannot identify what a "vector" is. (*Id.* at ¶ 7.)

Plaintiff further alleges that the walls, floors, bed bunks and cell bars are painted with lead paint that poses a serious health risk. (Def.'s 56.1 Statement ¶ 8.) In his deposition, Plaintiff admitted that he did not know if the paint at Stateville contains lead or was ever tested for lead. (*Id.*) Plaintiff never

had any health issues related to the alleged lead paint and he never spoke with Defendant or other Stateville staff about his concerns regarding lead paint. (*Id.*)

Plaintiff next alleges that Defendant failed to correct or remove "condensation pockets" within Stateville that "formed from the water leaking through the walls." (Def.'s 56.1 Statement ¶ 9.) The condensation pockets allegedly exposed Plaintiff to "many layers of old toxic paint" and multiple chemicals including: lead acetate, lead carbonate, barium sulfate and cadmium (*Id.*) Plaintiff alleges that these chemicals cause cancer and other serious health risks. (*Id.*) However, Plaintiff does not know what any of these chemicals are and he has never gotten sick from these chemicals. (*Id.* at ¶ 10.) Nor does Plaintiff know if he was actually exposed to any of these chemicals. (*Id.*)

Plaintiff also alleges that the cell walls had "toxic black mold." Plaintiff only saw the toxic black mold on one of his cell walls and he was provided with "chemicals to clean it off." (Def.'s 56.1 Statement ¶ 11.) He further indicated that the chemical (disinfectant) killed any germs resulting from the black mold. (*Id.*) Plaintiff never saw any additional black mold and his cells were never tested for black mold. (*Id.*) In addition, Plaintiff did not became ill from the black mold and never spoke with Defendant about the black mold. (*Id.*)

Plaintiff's complaint further alleges that the paint at Stateville is dangerous and flammable. (Def.'s 56.1 Statement ¶ 12.) However, Plaintiff admits that he does not know whether the paint is flammable and he never observed the paint catch fire. (*Id.*) Plaintiff has never been effected by the paint within Stateville and he never spoke with Defendant about the allegedly flammable paint. (*Id.*)

Plaintiff further alleges that the air vents in each cell have steel plates over the vent to prevent adequate air circulation. (Def.'s 56.1 Statement ¶ 13.) The lack of air circulation caused the air within the cells to have dust and other particles that caused an allergic reaction "on an almost daily basis."

(*Id.*) Plaintiff admits that he never lived in a cell that had a steel plate over the vent. (*Id.* at ¶ 14.) In his current cell in X House, there are two vents in each cell. (*Id.*) One of the two vents is covered by a block of wood. (*Id.*) There are windows in X House and inmates may ask correctional officers to open the windows. (*Id.*) A correctional officer has never denied Plaintiff's request that a window be opened. (*Id.*)

While housed in F House, Plaintiff's cell did not have an air vent but it did have windows. (Def.'s 56.1 Statement ¶ 15.) Plaintiff was able to open the windows in F House. (*Id.*) In B House, there are two vents in each cell and there are windows that may be opened. (*Id.*) Plaintiff has never been denied a request for an open window in B House. (*Id.*) While housed in B House, Plaintiff occasionally woke up from sneezing but he does not know if the sneezing was related to the air circulation of air quality. (*Id.* at ¶ 16.) Plaintiff does not believe that air in cells with open vents is different than the air in cells with covered vents and he never spoke with Defendant about the air quality at Stateville. (*Id.*)

Plaintiff further alleges that Stateville is infested with multiple pests, including birds, mice, roaches, ants, spiders and seasonal flying insects like mosquitoes, flies, gnats and moths. (Def.'s 56.1 Statement ¶ 17.) Plaintiff never suffered any damages related to these pests. (*Id.*) Plaintiff has only seen mice on "two or three" occasions during his entire time at Stateville and he does not recall any time he saw a mouse in his cell. (*Id.*) Plaintiff has seen approximately 7-13 cockroaches in Stateville on a daily basis. Plaintiff has never gotten sick from the cockroaches and he has never been affected in any other way by the cockroaches. (*Id.*) Plaintiff has never seen any ants at Stateville and has never been otherwise affected by ants at Stateville. (*Id.*) Plaintiff has seen two or three spiders during his entire stay at Stateville and has never been affected by spiders at Stateville. (*Id.*) Plaintiff observed

5

mosquitoes in the prison yard but has only seen thee of four mosquitoes in his cells the entire time he has been at Stateville. (*Id.*) Plaintiff has been bitten by mosquitoes 2-3 times since being at Stateville but his health has not been affected by the bites. (*Id.*) Plaintiff has never had any health complications nor been otherwise affected by the presence of flies in Stateville. (*Id.*) Plaintiff has never observed any gnats in his cell and has not been affected by any gnats while at Stateville. (*Id.*) Plaintiff has observed approximately two or three moths while at Stateville but has not been affected by any. (*Id.*)

Plaintiff alleges that there is a large population of birds within Stateville due to broken windows at the institution. (Def.'s 56.1 Statement ¶ 18.) He alleges that the birds have caused a large amount of bird feces on the floors that pose "significant health risks." (*Id.*) Inmates are provided a mop and buffer to clean bird feces off the floor. (*Id.*) Plaintiff has never gotten sick or been otherwise affected by birds or bird feces at Stateville. (*Id.*) Plaintiff does not recall if he ever spoke with Defendant about pests at Stateville but he never spoke with correctional officers regarding pests at Stateville. (*Id.* at ¶ 19)

Plaintiff also alleges that the "cell house lights are beaming on high beams 24 hours a day." (Def.'s 56.1 Statement ¶20.) The constant lighting "makes it nearly impossible to get a proper, healthy, uninterrupted night of sleep and leaves plaintiff and other inmates in a constant state of sleep deprivation." (*Id.*) Plaintiff knows that the lights are on for security purposes. (*Id.*) Plaintiff gets approximately six hours of sleep per night. (*Id.*) However, the light makes it take longer to fall asleep. (*Id.*) Once asleep, the light does not prevent Plaintiff from staying asleep. (*Id.*) The lighting causes Plaintiff to "start his day off a little slower than usual." (*Id.*) Plaintiff never spoke to Defendant regarding the lighting at Stateville or not getting enough sleep. (*Id.*)

6

Plaintiff further alleges that the "double man cell living conditions" at Stateville are unconstitutional. (Def.'s 56.1 Statement ¶ 21.) The cells Plaintiff has lived in at Stateville are approximately 6 feet by 9 feet. (*Id.*) Plaintiff has had a cellmate his entire time at Stateville. (*Id.*) Plaintiff has never had any issues with his cellmate at Stateville. (*Id.*) Having a cellmate has never affected Plaintiff's ability to get cleaning supplies, the cleanliness of his cell, his access to meals nor his access to medical care. (*Id.*) Nor has the presence of a cellmate affected Plaintiff's ability to get a prison job or have access to educational programming. (*Id.*) Plaintiff never spoke with Defendant about double-celling. (*Id.*)

Lastly, Plaintiff alleges that there are "systemic contaminations in Stateville drinking and cooking water." (Def.'s 56.1 Statement ¶ 22.) Plaintiff's complaint includes several documents allegedly showing that the water at Stateville is contaminated. (*Id.*) All of the documents predate Plaintiff's entry into Stateville in 2009. (*Id.*) Plaintiff admits that his only knowledge about the water at Stateville comes from the other inmate that drafted the grievance and complaint. (*Id.*) Plaintiff does not know if the water at Stateville has affected him in any way and he does not have an expert witness to testify regarding the water at Stateville and any possible ways it affected Plaintiff. (*Id.*) Plaintiff never spoke with Defendant regarding the alleged water contamination at Stateville. (*Id.*)

### III. DISCUSSION

The Eighth Amendment requires a minimum standard for the treatment of inmates by prison officials, including prison conditions cannot involve "the wanton and unnecessary infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). A two-part analysis is undertaken when a prisoner challenges the conditions of his confinement. *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008). The conditions at issue must be "sufficiently serious" so that "a prisoner official's act or omission

results in the denial of the minimal civilized measure of necessities." *Farmer v. Brennan*, 511 U.S. 832, 834 (1994). The prison conditions may be uncomfortable and harsh without violating the Eighth Amendment. *See Dixon v. Godinez*, 114 F.3d 640, 642 (7th Cir. 1997). The deprivations must be "extreme" for a conditions-of-confinement claim. *See Delaney v. DeTella*, 256 F.3d 679, 683 (7th Cir. 2001). "The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones[.]" *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996) (citing *Farmer*, 511 U.S. at 832). If the condition is sufficiently serious, the plaintiff must then demonstrate that the prison official acted with "deliberate indifference" to the prison condition. *See Wilson v. Seiter*, 501 U.S. 294, 302 (1994); *Townsend*, 522 F.3d at 773. "Deliberate indifference" means that the prison official knew that the inmate faced a substantial risk of serious harm but disregarded that risk by failing to take reasonable measures to address that risk. *Farmer*, 511 U.S. at 847; *Townsend*, 552 F.3d at 773.

Cleaning Supplies

In his response brief, Plaintiff argues that he was not receiving cleaning supplies until after he filed a grievance and that the cleaning supplies were confiscated when a shake down of the cell was completed. His deposition testimony, however, demonstrates otherwise. Plaintiff was unable to identify a single instance where he asked for cleaning supplies and he was not supplied such supplies. Plaintiff testified that he is currently provided cleaning supplies and that the procedure for receiving weekly cleaning supplies has been in place since "sometime last year." Prior to last year, inmates were provided soap with which to clean their cells and inmates used their personal towels and wash clothes to clean their cells. *See Sanchez v. Walker*, No. 09 C 2289, 2010 WL 5313815, at * 9 (N.D. Ill. Dec. 17, 2010) (Coleman, J.) (lack of cleaning supplies did not result in constitutional violation because plaintiff could have used available water and clothing to clean his cell); *compare with Vinning-El v.*

*Long*, 482 F.3d 923, 923-25 (7th Cir. 2007( (reversing summary judgment when prisoner was deprived of basic sanitation items while in a cell for six days in which blood and feces smeared the wall, water covered the floor, and the sink and toilet did not function). Plaintiff's conclusory and broad allegations are insufficient to establish the alleged lack of cleaning supplies resulted in the denial of the minimal civilized measure of necessities. A motion for summary judgment "requires the responding party to come forward with the evidence that it has – it is the 'put up or shut up' moment in a lawsuit." *Eberts v. Goderstad* 569 F.3d 757, 767 (7th Cir. 2009) (citations omitted).

Floors and Walls

Plaintiff alleges that the conditions of the floors and walls constitute unconstitutional living conditions. These conditions included living areas being painted with lead paint, condensation pockets within the walls that resulted in harmful chemicals being released into the cell, toxic black mold on the walls, and flammable paint on the walls. However, Plaintiff's deposition testimony demonstrates that the alleged conditions of the walls and floors did not amount to unconstitutional conditions of his confinement. Plaintiff admitted that he did not know if the paint at Stateville contains lead or was ever tested for lead; he did not know what any of the alleged chemicals were nor whether he was actually exposed to any of the chemicals; he saw toxic black mold in only one of his cells; he was provided with disinfectants to clean the black mold off the wall; he never saw any additional black mold; and, despite his allegation in his complaint, he did not know whether the paint in the cell was flammable, but he never observed the paint catch fire.

In his response brief, Plaintiff cites to a March 2012 "article" from what appears to be a publication entitled "Stateville Speaks" and an undated report from the John Howard Association of Illinois regarding a monitoring visit to Stateville on July 13, 2011. Plaintiff cites to these exhibits in

9

their entirety without any specific reference to how they support his general allegations. *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs"). In addition, Plaintiff lays no foundation to the exhibits and the exhibits include hearsay as the information contained in the exhibits are based on what unnamed prisoners told (presumably) the authors of the exhibits. *See MMG Financial Corp. v. Midwest Amusements Park*, 630 F.3d 651, 656 (7th Cir. 2011) (a party cannot avoid summary judgment through inadmissible hearsay evidence); *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997 (holding that newspaper articles are not proper evidence in assessing summary judgment). Lastly, as to the exhibits, Plaintiff fails to address how the exhibits from 2011 and 2012 support his allegations related to his complaint filed in 2009. Thus, the exhibits cannot be used by Plaintiff to defeat summary judgment. Given Plaintiff's deposition testimony and lack of a valid response to the summary judgment motion, he fails to establish the conditions of the walls and floors resulted in unconstitutional living conditions. *See Eberts*, 569 F.3d at 767.

<u>Air Vents</u>

Plaintiff alleged that there is inadequate air ventilation because the vents are covered with steel plates. Plaintiff does not address this allegation in his response brief. However, in his deposition, he admitted that he never lived in a cell that had a steel plate over the vent. In his current cell in X House, there are two vents in each cell. While one of the two vents is covered by a block of wood, there are windows in X House and Plaintiff's request to have a window opened has never been denied. Similarly, while housed in F House, Plaintiff's cell had a window that he was able to open for air ventilation. Plaintiff's unsupported allegations do not rise to a constitutional violation. *See Dixon v. Godinez*, 114

F.3d 640, 645 (7th Cir. 1997) (alleged lack of proper air ventilation did not rise to a constitutional violation where cell had a window which opened and the door had a small chuckhole for ventilation).

Pests and Birds

Plaintiff further alleges that Stateville is infested with multiple pests, including birds, mice, roaches, ants, spiders, and seasonal flying insects like mosquitoes, flies, gnats and moths. However, his deposition testimony demonstrated otherwise. Plaintiff testified that he never suffered any damages related to pests, he has only seen mice on "two or three" occasions during his entire time at Stateville and he does not recall any time he saw a mouse in his cell, he has seen approximately 7-13 cockroaches in Stateville on a daily basis, he has never seen any ants at Stateville and has never been otherwise affected by ants at Stateville, he has seen only two or three spiders during his entire stay at Stateville and has never affected by spiders at Stateville, he has observed mosquitoes in the prison yard but has only seen thee of four mosquitoes in his cells the entire time he has been at Stateville, he has only been bitten by mosquitoes 2-3 times since being at Stateville but is health has not been affected by the bites, he has never had any health complications nor been otherwise affected by the presence of flies in Stateville, he has never observed any gnats in his cell and has not been affected by any gnats while at Stateville, and he has observed approximately two or three moths while at Stateville but has not been affected by moths while at Stateville. As to the presence of birds and the their feces, inmates are provided a mop and buffer to clean bird feces off the floor and Plaintiff has never gotten sick or been otherwise affected by birds or bird feces at Stateville.

Plaintiff's allegations of the presence of a minimal number of some pests and birds during his entire stay at Stateville do not establish an objectively serious condition. Valid claims of an unconstitutional condition based upon pest infestation involve far more severe situations. *See, e.g.,*

11

*Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (allegation that roaches and mice were rampant, crawling on inmate's body stated a claim of an unconstitutional condition of confinement, particularly where the jail had sprayed only twice during a 16-month period ); *see also White v. Monohan*, 326 Fed. Appx. 385, 388, 2009 WL 1034265, 3 (7th Cir. 2009) (five-year exposure to roaches, mice, bees, and wasps that stung and bit detainee stated a claim of unconstitutional condition of confinement); *Moore v. Monahan*, No. 06 C 6088, 2009 WL 310963 at *7 (N.D. Ill. Feb. 9, 2009) (St. Eve, J.) (five and one-half months of exposure to insects, during which inmate was never bitten, did not amount to a constitutional violation).

In his response brief, Plaintiff states that the pest infestation is "still out of control." Plaintiff cites a July 27, 2011, Memorandum regarding a monthly safety and sanitation inspection of Stateville in July 2011, and the John Howard Association of Illinois report. However, Plaintiff does not indicate what information within the multi-page exhibits support his allegations nor does he address how the reports from 2011 support his allegations about the living conditions in 2009. Thus, the mere reference to these reports do not raise an issue of material facts regarding the alleged infestations at Stateville.

<u>Lighting</u>

Plaintiff also alleges that the "cell house lights are beaming on high beams 24 hours a day." Plaintiff concedes that the lights are on for security purposes. Plaintiff alleges that constant lighting "makes it nearly impossible to get a proper, healthy, uninterrupted night of sleep and leaves plaintiff and other inmates in a constant state of sleep deprivation." However, he admits that he gets approximately six hours of sleep per night and that, while it takes longer to get to sleep, once asleep, the light does not prevent him from staying asleep.

Plaintiff does not address this claim in his response brief and the allegations do not rise to a sufficiently serious deprivation. *See Vasquez v. Frank*, 290 Fed. Appx. 927, at * 3 (7th Cir. Aug. 14, 2008) (24-hour lighting for security reasons did not constitute an extreme deprivation); *McBride v. Frank*, No. 05 C 1058, 2009 WL 2591618, at * 5 (E. D. Wis. Aug. 21, 2009) (Adelman, J.) (finding constant illumination that did not result in any sleep deprivation or other serious health problems did not constitute an extreme deprivation).

Double-Man Cells

Plaintiff further alleges that the "double man cell living conditions" at Stateville are unconstitutional. Double celling, by itself, does not amount to a constitutional violation. *Rhodes v. Chapman*, 452 U.S. 337, 348-49 (1981). Where double celling does "not lead to deprivations of essential food, medical care, or sanitation" and does not "increase violence among inmates or create other conditions intolerable for prison confinement," it does not constitute punishment. *Rhodes*, 452 U.S. at 348. While Plaintiff has always had a cellmate, having a cellmate has never affected Plaintiff's ability to get cleaning supplies, the cleanliness of his cell, his access to meals nor his access to medical care. Nor has the presence of a cellmate affected Plaintiff's ability to get a job or have access to educational programming. In addition, Plaintiff has never had any issues with his cellmate. Thus, Plaintiff has not demonstrated that his placement with an cellmate constitutes a constitutional violation.

Water at Stateville

Lastly, Plaintiff alleges that there are "systemic contaminations in Stateville drinking and cooking water." Plaintiff's complaint includes several documents allegedly showing that the water at Stateville is contaminated. However, all of the documents predate Plaintiff's entry into Stateville in 2009. Plaintiff also cites to several outdated exhibits in his response brief. Plaintiff does not address

that the exhibits are based on outdated data and he fails to indicate what facts within the multi-page exhibits support his claim. Furthermore, the prison does not have the duty to provide water that is "completely free from pollution or safety hazards." *Carroll v. DeTella*, 255 F.3d 470, 472 (7th Cir. 2001). In affirming the denial of claim regarding the water supply at Stateville, the Seventh Circuit found that "The Eighth Amendment does not require prisons to provide prisoners with more salubrious air, healthier food, or cleaner water than are enjoyed by substantial numbers of free Americans." *Carroll*, 255 F.3d at 472. Plaintiff provides no evidence that water supply at Stateville contains systemic contamination that constitutes a violation of his constitutional rights.

Based on the above, the undisputed evidence demonstrates that the conditions of Plaintiff's confinement were not so harsh to amount to a constitutional violation.

## CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment [47] is granted. Plaintiff's complaint is dismissed. Judgement is rendered in favor of Defendant. Plaintiff shall take nothing from this case. This case is terminated.

DATED: 10/26/12

ENTER: _____
Charles R. Norgle
United States Magistrate Judge